**Sam MALIA and Ingrid Malia, Plaintiffs,**

v.

**RCA CORPORATION, Defendant.**

**No. Civ. 85-0721.**

United States District Court,
M.D. Pennsylvania.

July 27, 1988.

Lawrence A. Durkin, Scranton, Pa., for plaintiffs.

John H. Leddy, Frank C. Sabatino, Philadelphia, Pa., for defendant.

## OPINION

CONABOY, District Judge.

Plaintiff, Sam Malia, an employee of the Defendant, RCA Corporation, since 1966, instituted this five-count action against his employer. The Plaintiff alleges that, while he was an officer and member of the Union, the Defendant Corporation fraudulently induced him to enter into a contract to leave his Union position and take a job in management. He charges the agreement provided he could return with full seniority to the bargaining unit whenever he became dissatisfied with his new position.

In Count I he charges the Defendant with breach of contract; in Count II with fraudulent misrepresentation; in Count III with intentional interference with contractual relations; in Count IV with intentional infliction of emotional distress; and in Count V his wife joins as the Plaintiff seeking derivative consortium damages. The Defendant has filed a motion for sum-

mary judgment following extensive discovery and Plaintiffs have filed their opposition. Defendant's reply brief was filed on June 27, 1988 and thus the matter is ripe for determination. Trial is scheduled to commence on *Tuesday, August 2, 1988.*

We will grant the motion as to Counts III, IV and V of the Complaint, but will deny the motion as to Counts I and II and direct that trial will proceed on the allegations made in the Complaint on those Counts.

Relying principally on the authority of *Poyser v. Newman & Co.,* 514 Pa. 32, 522 A.2d 548 (1987), the Defendant argues that the Pennsylvania Workmen's Compensation Act completely bars all tortious claims of an employee against his employer, intentional or otherwise.

Defendant responds to this argument alleging that *Poyser* does not fully address the issue of infliction of intentional injury by an employer upon an employee. The Defendant argues additionally that under the doctrine of "dual capacity" the Defendant could be liable to the Plaintiff beyond the Workmen's Compensation Act for breaches of statutory duties owed to the Plaintiff. Plaintiff, in support of this argument, cites *Kline v. Arden H. Verner Co.,* 503 Pa. 251, 469 A.2d 158 (1983); *Barber v. Pittsburgh Corning Corp.,* 365 Pa.Super.Ct. 247, 529 A.2d 491, (1987); and *Tatrai v. Presbyterian University Hospital,* 497 Pa. 247, 439 A.2d 1162 (1982).

While we find that the issue of preemption is close, we do not base our decision on that issue since there are more compelling reasons to grant summary judgment as against several of the Counts of this complaint.

As to Count III, intentional interference with contractual relations, we will grant the motion for summary judgment since the Plaintiff offers no opposition.

As to Count IV, intentional infliction of emotional distress, we agree with Defendant that the Plaintiff's claim fails as a matter of law.

There is some argument here, between the parties, as to whether or not this tort has been recognized or abolished by the Pennsylvania Appellate Courts. Both parties cite *Kazatsky v. King David Memorial Park, Inc.*, 515 Pa. 183, 527 A.2d 988 (1987) where the Supreme Court does indeed discuss such a tort and discusses Section 46 of the Restatement of Torts which gives birth to this cause of action, but does not make any final determination on the issue of whether or not Section 46 has been fully adopted or rejected in Pennsylvania.

In *Daughen v. Fox*, 372 Pa.Super. 405, 539 A.2d 858 (1988) the Superior Court of Pennsylvania discussed Section 46, its elements, and its status in Pennsylvania. The general tenor of that opinion is that its status is unsettled in Pennsylvania in that it has never been fully adopted by the Supreme Court of Pennsylvania. The Court in that case, however, goes on to discuss the elements of the tort and reviews a Plaintiff's obligation in seeking to recover under such a count.

Section 46 of the Restatement 2d provides as follows:

Outrageous conduct causing severe emotional distress.

(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

The Superior Court then goes on to discuss a variety of cases in which the application of Section 46 was considered. The Court points out that, assuming Section 46 of the Restatement were to be considered the law, that the essential elements under that Section are extreme and outrageous conduct toward the Plaintiff. It holds that it is for the Court to determine in the first instance whether Defendant's conduct can reasonably be regarded as so extreme and outrageous as to permit recovery.

Comment (d) to Section 46 discusses extreme and outrageous conduct:

(d) Extreme and Outrageous Conduct. The cases thus far decided have found liability only where the Defendant's conduct has been extreme and outrageous. It has not been enough that the Defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice", or a degree of aggravation which would entitle the Plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "outrageous".

Here, Plaintiff argues that employees of the Defendant conspired to induce the Plaintiff to enter into an agreement which would remove him from his role as an officer in the Union and take a position in management. They argue that the Defendant knew or should have known of some physical problems which the Plaintiff had which would make it difficult for him to carry on his duties in the management position. They allege too that Defendant had no intention of allowing the Plaintiff to return to the bargaining unit or to his position as a potential officer in the bargaining unit. Reference to the depositions show that the Defendant was disturbed with Plaintiff's conduct as the President of the Union and felt that his conduct was detrimental to the welfare of the entire company. They felt that he was irrational in his conduct and that he perhaps had a problem with excessive use of alcohol, among other things. The depositions indicate that several employees of the Defendant discussed this problem and concluded that it would be better for all concerned if Plaintiff did not hold a powerful position as President of the Union, and perhaps was transferred, instead, to a position in management.

Even if one were to concede that this conduct was designed to deprive the Plain-

tiff of a certain status that he held as an officer of the Union and designed to place him in a position where he would no longer have any influence on the conduct of the affairs of this company, and further, if it were conceded that the actions were taken in spite of some physical difficulties of the Plaintiff, it would not amount to the kind of conduct perceived by Section 46. Labor relations are often difficult and in the ordinary day-to-day conduct of a large business enterprise there are often tensions between labor and management wherein each side tries to out do the other, and each side seeks what it considers to be a result in its best interest. In this atmosphere it has always been a reality that certain decisions will impact more adversely on one side than the other. This Court sees the conduct of the parties here in that framework and fails to see how the conduct alleged against the Defendant rises to a violation of the tortious concept defined in Section 46.

We will, therefore, grant summary judgment to Defendant in Count IV.

■ The Plaintiffs' claims in Counts I and II are based on contract, and the Defendant argues these claims should be dismissed as a matter of law since the Plaintiff fails to allege definite terms of the contract and fails also to allege appropriate consideration. Since we are bound to consider the items submitted here in the light most favorable to the Plaintiff, however, we disagree with the Defendant and find that the Plaintiff has made his allegations with sufficient definiteness to allow this matter to proceed to trial on these two Counts. The contract involved here is an oral contract and the Plaintiff has alleged sufficient facts to show that there were meetings and discussions of the parties here involved out of which a jury could find that a contract did in fact emerge. It is true that the Plaintiff must produce sufficient evidence upon which a jury can, in fact, delineate the terms of the contract, including the length of the contract and the consideration which passed between the parties. It is true also that the Plaintiff might have a difficult time in doing this in the course of a trial and that perhaps the

Court will again be faced with the question of whether or not Plaintiff's claim fails as a matter of law at the end of the Plaintiff's presentation. It would be inappropriate, however, to grant summary judgment in favor of the Defendant at this juncture and we will direct that the case will proceed to trial on Counts I and II. *See McCormack v. Jermyn*, 351 Pa. 161, 40 A.2d 477 (1945); and, *Darlington v. General Electric*, 350 Pa.Super. 183, 504 A.2d 306 (1986).

We are dealing here with an oral contract, and it is difficult to determine the exact circumstances under which the parties were operating on submission of pleadings in that type of case. Because of the allegations in the complaint, as well as the matters referred to in the various depositions submitted with this motion, it is the better practice to give the Plaintiff an opportunity to present his testimony in the Courtroom to determine whether or not he can produce sufficient evidence to establish the terms of the alleged contract.

■ In making this decision to allow the Plaintiff to proceed to trial on Counts I and II, we note that the Plaintiff in his brief indicates he intends to seek damages for emotional distress under these two Counts. For two reasons we disagree with the Plaintiff's alleged right to proceed for such damages. First, Plaintiff makes no such claim in his complaint under Counts I and II and under those counts seeks only reinstatement with full seniority to the bargaining unit, and money damages for loss of overtime.

Secondly, the case of *Rittenhouse Regency Affiliates v. Passen*, 333 Pa.Super. 613, 482 A.2d 1042 (1984), cited by the Plaintiff, appropriately sets out the standard under which damages for emotional distress may be sought or awarded in a contract claim.

Although it is recognized that in certain cases a breach of contract can be tortious, *Fair v. Negley*, 257 Pa.Super. 50, 390 A.2d 240 (1978); *Beasley v. Freedman*, 256 Pa.Super. 208, 389 A.2d 1087 (1978), the essence of such a tort must be extreme and outrageous conduct. "Liability has been found only where the

conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Martin v. Little, Brown & Co.,* 304 Pa.Super. 424, 450 A.2d 984 (1981), ...."

The Court in *Rittenhouse* teaches further that damages for emotional distress are not ordinarily allowed in actions for breach of contract except in two specific instances; (1) where the emotional distress accompanies bodily injury; and (2) where the breach is of such a type that serious emotional disturbance is a particularly likely result.

In our discussion of Count IV we set out our reasoning why we find the Plaintiff in this action cannot make out a case for outrageous, atrocious, or intolerable conduct and that same reasoning applies to any claim for damages for emotional distress arising from the alleged breach of contract in this case.

Because of the foregoing reasoning, we will allow the Plaintiff to proceed on Counts I and II on the contractual theory, but will not allow the Plaintiff to proceed on any claim for emotional distress under these Counts.[1]

The claim of the spouse in Count V is acknowledged by both parties to be derivative of any claim that the Plaintiff has against the Defendant herein. Since we have disallowed all but the contractual claims in this case, there is no derivative spousal claim for consortium remaining, and thus we will also grant the motion for summary judgment as to Count V.

In summary then, we will allow the Plaintiffs to proceed to trial on the contractual theories alleged in Counts I and II and we will grant to the Defendant summary judgment against the Plaintiffs on Counts III, IV and V.

---

**1.** In *Zamboni v. Stamler et al.,* 847 F.2d 73 (3d Cir.1988) considered the same issue and found conduct similar to that in the instant case does not rise to the level required for the tort of intentional infliction of emotional distress.